IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANNETTE McKINSTRY, ) <br> On behalf of the Estate <br> of Willena Broadnax ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NORTH HILL NURSING AND <br> REHABILITATION CENTER, LLC, ) <br> ) <br> Defendant. ) | Case No. 2:19-CV-01331-KOB |

## MEMORANDUM OPINION

This matter comes before the court on Defendant North Hill Nursing and Rehabilitation Center's motion to compel arbitration. (Doc. 18.) Plaintiff brought this suit in state court on July 12, 2019. Defendant removed the case on August 16, 2019 on diversity grounds and then filed the instant motion on October 17, 2019. The court ordered Plaintiff to show cause why the court should not compel arbitration on October 18, 2019 (Doc. 20), and both parties submitted briefs to the court. (Docs. 21, 23.) For the reasons explained below, the court will GRANT Defendant's motion to compel arbitration.

**Background**

Plaintiff Annette McKinstry, on behalf of decedent Willena Broadnax, brings three claims against Defendant North Hill Nursing and Rehabilitation Center: negligence, wantonness, and wrongful death. (Doc. 1-1 at 9–13.) Plaintiff also purports to bring these claims, under a theory of *respondeat superior*, against 810 fictitious Defendants associated with North Hill. (*Id.* at 5.) To support these claims, Plaintiff alleges that Defendants proximately caused Ms.

Broadnax's death by failing to adequately care for her physical and mental well-being, especially her infected feet, while she resided in Defendants' nursing care facility between December 2015 and August 2017. Plaintiff further alleges that Defendants knowingly maintained insufficient staffing levels, which contributed to Ms. Broadnax's infection and subsequent death. (*Id.* at 6–9.)

About two weeks before Ms. Broadnax entered Defendants' facility on or about December 3, 2015, Ms. Broadnax's personal representative and Plaintiff here, Annette McKinstry, signed an Admission Agreement that included an arbitration clause. The clause provided as follows:

> If the Resident or Resident's Authorized Representative chooses to enter in the Arbitration Agreement attached hereto as "Exhibit B," then any disputes or claims arising under, or in connection with, or related to this Agreement or Resident's stay at Facility shall be subject to the terms and conditions of the Arbitration Agreement, and the Arbitration Agreement is fully incorporated herein by reference.

(Doc. 19-2 at 20.) The attached arbitration agreement, which Ms. McKinstry also signed, stated that "all claims, disputes, and controversies of any kind between the parties arising out of or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved exclusively by binding arbitration." (*Id.* at 24, 28.)

Contesting Defendants' motion to compel arbitration, Plaintiff asserts two arguments. First, she argues that the court should void the arbitration agreement based on lack of mutual assent. (Doc. 21 at 9–16.) Second, she contends that the arbitration agreement is unconscionable. (*Id.* at 16–23.)

**Standard**

The Federal Arbitration Act provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract." 9 U.S.C. § 2. The FAA's language underscores a "strong federal policy favoring the enforceability of arbitration contracts." *Koullas v. Ramsey*, 683 So. 2d 415, 416–17 (Ala. 1996) (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 271 (1995)). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or . . . [a] defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). A court should not deny arbitration unless it can determine "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Communications Workers of Am., Inc.*, 475 U.S. 643, 650 (1986).

**Analysis**

    A.  *Lack of Mutual Assent*

In Alabama, the four elements of a valid arbitration agreement include offer, acceptance, consideration, and mutual assent. *Ex parte Bill Heard Chevrolet, Inc.*, 927 So. 2d 792, 802 (Ala. 2005). Plaintiff argues that the parties never mutually assented to the Arbitration Agreement because the arbitration provider, JAMS, maintains a policy under which it can change its own policies and procedures at its own discretion. (Doc. 21 at 9–16.)

The signed Arbitration Agreement specifies that arbitration provider JAMS shall conduct any necessary arbitration between North Hill and Ms. Broadnax or her representatives. JAMS' Comprehensive Arbitration Rules and Procedures, a policy guide attached to the Arbitration Agreement, states that JAMS reserves the right to amend its rules without notice. (Doc. 21-1 at 5.) Plaintiff appears to argue that because JAMS can change its procedures, then all parties who

agree to use JAMS as their arbitration provider have reached an indefinite, non-enforceable agreement. (Doc. 21 at 10.) This contention lacks merit.

As Plaintiff correctly points out, Alabama case law is clear that "indefiniteness may render a contract void for lack of mutuality of obligation." *Macon Cty. Greyhound Park v. Knowles*, 39 So. 3d 100, 108 (Ala. 2009) (internal citations omitted). But here, the parties' agreement is unequivocal and definite: JAMS will handle any necessary arbitration. Exactly how JAMS decides to conduct the arbitration presents an issue wholly irrelevant to the matter of mutual assent to arbitrate through JAMS. If an arbitrator fails to abide by the constraints of the FAA, then the statute provides an appeals process to correct any errors committed in the arbitration process. 9 U.S.C. § 10–16. But as long as JAMS abides by the FAA, the court has no more business questioning JAMS' internal policies than it would questioning whether a painter uses a brush or a roller to fulfill his contractual burden to paint a house green for $3,000 by next Thursday. *See, e.g.*, *South Alabama Pigs, LLC v. Farmer Feeders, Inc.*, 305 F. Supp. 2d 1252, 1261-62 (M.D. Ala. 2004) (enforcing an arbitration provision that did not specify a method for selecting arbitrators, state whether arbitration would be binding, or provide any details for how the arbitration would proceed); *Robertson v. Mount Royal Towers*, 134 So. 3d 862, 868 (Ala. 2013) (rejecting the argument that "arbitration agreements are too vague to be enforced because they make only a general call for arbitration without providing any details regarding the selection of an arbitrator or arbitrators or the applicable rules of arbitration").

For these reasons, the court rejects Plaintiff's argument that the contract is indefinite and instead finds that the parties mutually assented to enter into a binding arbitration agreement.

   B. *Unconscionability*

Plaintiff also contends that the Arbitration Agreement is unconscionable because (1) the Agreement's language is overbroad and (2) potential residents cannot gain admittance to nursing facilities without signing arbitration agreements. (*Id.*)

When a party raising the defense of unconscionability challenges "the arbitration clause itself, as opposed to the contract as a whole, the court, and not the arbitrator, resolves the issue." *Green Tree Fin. Corp. v. Wampler*, 749 So. 2d 409, 413 (Ala. 1999). Here, Plaintiff alleges that the arbitration agreement is unconscionable (Doc. 21 at 16–24), so the court must address her contentions.

An unconscionable contract contains two elements: "(1) terms that are grossly favorable to a party that has (2) overwhelming bargaining power." *Am. Gen. Fin. v. Branch*, 793 So. 2d 738, 748 (Ala. 2000). In the arbitration context, the Alabama Supreme Court re-casts these elements in terms of "procedural" and "substantive" unconscionability. *Blue Cross Blue Shield v. Rigas*, 923 So. 2d 1077, 1087 (Ala. 2005). Procedural unconscionability refers to whether the party that signs the agreement has a "meaningful choice" of acquiring the desired goods or services through alternative means. *Leeman v. Cook's Pest Control, Inc.*, 902 So. 2d 641, 646 (Ala. 2004).

On the other hand, a substantively unconscionable arbitration agreement contains terms that

> impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction.

*Family Sec. Credit Union v. Etheredge*, 238 So. 3d 35, 39 (Ala. 2017) (citations omitted). A party seeking to void an arbitration agreement must show *both* procedural and substantive unconscionability. *Id.*

Here, Plaintiff's first argument—that the agreement's language is overbroad—relates to substantive unconscionability, and her second argument—that potential residents cannot gain admittance to nursing facilities without signing arbitration agreements—relates to procedural unconscionability.

Looking first to substantive unconscionability, Plaintiff argues that the text of the Arbitration Agreement is overbroad because it includes language that sweeps up activities that "relat[e] in any way" to the parties' relationship and binds certain non-parties' past, present, and future actions to mandatory arbitration. (Doc. 21 at 22–23.) Plaintiff points to *Am. Gen. Fin. v. Branch*, 793 So. 2d 738, 748 (Ala. 2000) for the proposition that these types of inclusions render an arbitration agreement substantively unconscionable. (*Id.* at 23.)

In *Branch,* the Alabama Supreme Court indeed considered the same types of broad-sweeping inclusions—such as the phrase "relating to" and text that bound non-parties—that appear in the arbitration agreement currently before the court. The Court in *Branch* found that such inclusions were an "indicium of unconscionability." *Branch,* 793 So. 2d at 748. But in finding that an arbitration agreement was unconscionable, the Court also considered three other indicia of unconscionability, none of which Plaintiff alleges here: that the agreement (1) purported to vest the arbitrator with authority to determine threshold issues of arbitrability; (2) exempted the defendant from arbitration and only bound possible plaintiffs; and (3) capped any possible arbitration award. *Id.* at 749.

Since *Branch*, the Alabama Supreme Court has enforced arbitration agreements that include fewer than all four of these indicia of unconscionability. *See, e.g., Vann v. First Cmty. Credit Corp.*, 834 So. 2d 751, 754 (Ala. 2002) (enforcing an agreement, just like the one at bar, that included "related to" language but did not assign threshold determinations of arbitrability to the arbitrator, reserve the defendant's right to sue in court, or cap the award amount); *see also Bess v. Check Express*, 294 F.3d 1298, 1308 (11th Cir. 2002) (finding an arbitration agreement not unconscionable under Alabama law and noting that "[a]lthough we agree with [the plaintiff] that the arbitration agreement here, like that in *Branch*, is unusually broad, that is the only meaningful similarity between the two cases.")

Here, the court likewise finds that the arbitration agreement's language, broad though it may be, does not in and of itself render the agreement substantively unconscionable. Because Plaintiff has not shown the required element of substantive unconscionability, her entire unconscionability argument fails, and the court need not analyze whether the arbitration agreement is procedurally unconscionable.

**Conclusion**

For the reasons explained above, the court will GRANT Defendants' motion to compel arbitration (Doc. 18) and STAY the case pending the outcome of arbitration. *See Shearson/American Express v. McMahon*, 482 U.S. 220, 226 (1987). ("[A] court must stay its proceedings if it is satisfied that an issue before it is arbitrable."). The court will enter a separate order accompanying this memorandum opinion.

**DONE** and **ORDERED** this 26th day of November, 2019.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE